[Civ. No. 19276. First Dist., Div. One. Nov. 27, 1962.]

OLE R. YECNY, Plaintiff and Appellant, v. ECLIPSE FUEL ENGINEERING CO., Defendant and Respondent.

DENNIS A. GREEN, Plaintiff and Appellant, v. ECLIPSE FUEL ENGINEERING CO., Defendant and Respondent.

FRANCIS P. WAKEFIELD, Plaintiff and Appellant, v. ECLIPSE FUEL ENGINEERING CO., Defendant and Respondent.

THOMAS H. BEATTY, Plaintiff and Appellant, v. ECLIPSE FUEL ENGINEERING CO., Defendant and Respondent.

LARRY JOE REECE et al., Plaintiffs and Appellants, v. ECLIPSE FUEL ENGINEERING CO., Defendant and Respondent.

(Consolidated Cases.)

194

Boccardo, Blum, Lull, Niland & Teerlink and Edward J. Niland for Plaintiffs and Appellants.

Lamb, Hoge & Glynn and Herbert Chamberlin for Defendant and Respondent.

BRAY, P. J.—Plaintiffs in consolidated actions against defendant appeal from judgments in defendant's favor.[1]

---

[1]Plaintiffs, other than Reece and Kohn, all of whom were injured in the explosion hereinafter related, brought separate actions in negligence against a number of defendants who had supplied various component parts of the vaporizer and against defendant Eclipse. In those actions, a

### QUESTIONS PRESENTED

(1) Alleged error in refusing and giving certain instructions, and (2) in admitting evidence of a certain experiment.

### RECORD

The actions arose out of an explosion and fire at the Owens-Corning Fiberglas plant in Santa Clara, where all of the plaintiffs are employed. Defendant Eclipse is a manufacturer who supplied to Owens-Corning a device, known as a McKee vaporizer, used in the manufacture of insulation products at the Owens-Corning plant.

There were 38 witnesses who testified, and there were over 60 exhibits admitted. Plaintiffs' theory was that the vaporizer furnished by defendant to Owens-Corning some four and a half years prior to the accident was defective and a proximate cause of the explosion and fire which injured plaintiffs, and that the defects ''were brought about through the carelessness and negligence of defendant Eclipse in the manner in which it designed and selected its component parts, and in the manner in which the said defendant manufactured and sold the unit in question.''

As plaintiffs concede the sufficiency of the evidence to support the verdicts and the judgments, it is unnecessary to review the evidence, except such portions as may be necessary in considering the instructions given and refused.

1. THE INSTRUCTIONS. (a) *Those given.*

■ Defendant's instruction 11: ''I instruct you that a manufacturer or seller of an article is entitled to assume that his product will be put to a normal use and he is not subject to liability where injuries result from its being misused, unless such misuse could reasonably have been anticipated.''

Plaintiffs first contend that the evidence discloses that defendant did anticipate the hazard of misuse and that hence the instruction should not have been given. This contention is based upon the testimony of Magnuson, one of defendant's vice presidents, to the effect that Eclipse had seal welded tubes in the vaporizer because it had had experience with

---

jury rendered a verdict for $96,500 against Eclipse and the other defendants were granted nonsuits. Subsequently, the trial court granted a new trial to Eclipse. Thereafter an action brought by Reece and Kohn was consolidated with the actions of the other plaintiffs. The consolidated actions then proceeded to a jury trial against defendant Eclipse. Separate verdicts and judgments were rendered in favor of defendant Eclipse and against all plaintiffs. A motion for new trial was denied. All plaintiffs appealed and their appeals have been consolidated.

customers who, perhaps through no fault of their own, through negligence or because something had happened, had improperly used the vaporizer. On another occasion, he testified that he assumed the unit was going to be properly used but that he knew that ''is not always true.''

The answer to this contention is that just because certain varieties of misuse may have been anticipated, that does not mean that all were. It was a question for the jury to determine as to whether Magnuson's statements showed knowledge of the type of misuse claimed to have occurred. Therefore, the instruction was proper to be applied if the jury determined that the alleged misuse had not been anticipated.

Plaintiffs secondly contend that the instruction was too broad in that it would apply not only to an accident resulting *solely* from misuse but would also apply to one resulting from both misuse *and* negligence on defendant's part in design, inspection or workmanship. In other words, plaintiffs contend that the instruction was an erroneous statement of the law concerning concurrent cause. However, the instruction actually had reference to the duty of care of a manufacturer or supplier rather than proximate cause. ▮ In such case, the law is that a manufacturer or supplier is liable only when the misuse by a customer is one that is reasonably foreseeable. (See *Phillips* v. *Ogle Aluminum Furniture, Inc.* (1951) 106 Cal.App.2d 650, 654 [235 P.2d 857]; Prosser on Torts, p. 503, § 84.)

▮ Plaintiffs' instruction 10 concludes: ''It is no defense to one who has negligently caused injury to a person to prove or establish that some one else was also negligent, whether he be a party to the action or not, and that the negligence of that person also proximately contributed to such injuries.''

This instruction, combined with other instructions given, completely covered the subject of concurring cause. There was no error in giving defendant's instruction 11.

Defendant's instructions 24 and 26: ''Under the law, the defendant Eclipse cannot be liable for an accident unless the accident was proximately caused by some negligent act or omission on its part. If you find from the evidence that the accident in question would not have happened by reason of any act of said defendant Eclipse except for some later and independent act or omission of some other person in connection with the vaporizer and its controls, then the accident is not one for which defendant Eclipse can be held responsible.''

"You are instructed that an injury is not actionable which would not have resulted except for the intervention of an independent cause. If the negligence, claimed to be the cause of the injury, is shown to have been interrupted by a separate, intervening act of a third party, negligent or otherwise, then the chain of causation is broken and the negligence complained of becomes so remote that it can no longer be considered the proximate cause of an injury."

Taken together, it would appear that these instructions might be interpreted to mean ". . . that an injury is not actionable which would not have resulted from the act of negligence, except for the interposition of an independent cause," quoting from *Schwartz* v. *California Gas etc. Corp.* (1912) 163 Cal. 398, 402 [125 P. 1044], which proposition was held erroneous in *Mosley* v. *Arden Farms Co.* (1945) 26 Cal.2d 213, 219-220 [157 P.2d 372, 158 A.L.R. 872]. The court there stated: "It is not always true that an intervening agency will relieve defendant of responsibility." (P. 220.) The court said that the rules on the subject in the Restatement of Torts, sections 442-453, are applicable in California. ▮ The cases, following section 447, have held that an intervening act of a third person, negligent in itself, is not a superseding cause of injury which the defendant's negligence is a substantial factor in bringing about, if the defendant at the time of his negligent conduct should have realized that a third person might so act, or if the subsequent act, in the eyes of the reasonably prudent man knowing the existing situation, was not highly extraordinary. Foreseeability is the key element. (See *Stewart* v. *Cox* (1961) 55 Cal.2d 857, 863-864 [13 Cal.Rptr. 521, 362 P.2d 345] ; *Warner* v. *Santa Catalina Island Co.* (1955) 44 Cal.2d 310, 319 [282 P.2d 12].)

While apparently the question of foreseeability is not mentioned in these instructions it does appear in instruction 11 hereinbefore set forth and again in an instruction to the effect that the duty of ordinary care required of a supplier is affected by his knowledge, and what he should know in the exercise of ordinary care of "whether or not the appliance or its use is fraught with any danger; the circumstances and manner of its proposed or probable use; the experience or inexperience of the user, his age, judgment, or other attributes that might reasonably be expected to affect his use of the chattel; the user's knowledge of such appliance, and whether or not reasonable prudence would require the giving of any instructions or warning to him . . ."

■ The instructions must be considered as a whole rather than taking them out of context. *(Lund* v. *Pacific Electric Ry. Co.* (1944) 25 Cal.2d 287, 294 [153 P.2d 705] ; *Wells* v. *Lloyd* (1942) 21 Cal.2d 452, 458 [132 P.2d 471].)

■ If the instructions harmonize as a whole and fairly and accurately state the applicable law, a reversal may not be had because of verbal inaccuracies or because a separate instruction does not contain all of the elements which are to be gathered from the instructions as a whole. *(Westover* v. *City of Los Angeles* (1942) 20 Cal.2d 635, 637 [128 P.2d 350] ; *Smith* v. *H. E. Anning Co.* (1958) 156 Cal.App.2d 842, 849 [320 P.2d 42].) It also must appear that a different result would have been probable had the questioned instructions not been given. *(Chance* v. *Lawry's Inc.* (1962) 58 Cal.2d 368, 382 [24 Cal.Rptr. 209, 374 P.2d 185] ; *Taylor* v. *Pacific Container Co.* (1957) 148 Cal.App.2d 505, 513 [306 P.2d 1049].)

In addition to the instructions above mentioned, there were others such as those stating that defendant would be liable if it failed to make the vaporizer ''reasonably safe for the use which was to be made of it in the Owens-Corning plant,'' that plaintiffs are entitled to recover from defendant if ''defendant is found by you to have been negligent in any respect and if that negligence is found by you to have proximately contributed in any degree, no matter how slight, to the plaintiffs' injuries. Even if you should believe that some of the parties originally named were also negligent and that their negligence contributed to plaintiffs' injuries, this would not in any way prevent recovery by the plaintiffs against the defendant Eclipse if this defendant was found by you to have been negligent . . .'' If the ''injury was wholly or partly the result'' of a cause for which Eclipse is responsible plaintiffs may recover. If the jury finds that defendant was negligent and its negligence proximately contributed to plaintiffs' injuries, its verdict must be in favor of plaintiffs even though it might find that the negligence of ''another defendant, or the Owens-Corning Company, or its employees, or some other person, firm or corporation . . ., whether named herein or not, concurred with the negligence of defendant Eclipse, if any, in proximately causing'' plaintiffs' injuries. ''When injury . . . is caused by the joint and concurrent negligence of two or more persons or corporations, the injured person may pursue his remedy against any one or all of the joint wrongdoers, and may recover all of his

damages against any one of the wrongdoers." If the jury found others besides defendant negligent the award in favor of plaintiffs should not be diminished because of that fact. Considering the instructions as a whole we do not see how the jury could have been misled by defendant's instructions 24 and 26.

Defendant's instruction 30 reads: "Where there are two or more possible causes of an injury, for one of which the defendant Eclipse is not responsible, the plaintiffs, in order to recover, must show by competent evidence that the injury was wholly or partly the result of that cause which would render the defendant Eclipse liable. If the entire evidence in the case leaves it just as probable that the injury was the result of one cause as the other, the plaintiffs have not met their burden of proof."

Plaintiffs contend that since this instruction immediately followed instruction 24 hereinbefore discussed, it told the jury that plaintiffs had the burden of proving that the accident happened solely because of negligence of defendant, ignoring the possibility of concurrent causation. This contention completely ignores the words "or partly" in the instruction. With these words concurrent cause is covered.

(b) *Instructions refused.*

Plaintiffs complain of the failure to give an offered instruction to the effect that if the seller and assembler of an article has negligently failed to use ordinary care in its assembly, such seller and assembler is not relieved from liability for injury caused by the article, even if the defective condition was one which might have been discovered by the purchaser had he made inspection or tests of the article for the purpose of discovering defects. As this instruction neglected to include the element of foreseeability the court was entitled to reject it. As to the requirement of foreseeability, see *Gall* v. *Union Ice Co.* (1951) 108 Cal.App.2d 303, 313 [239 P.2d 48]; *Northwestern Nat. Ins. Co.* v. *Rogers etc. Foundry* (1946) 73 Cal.App.2d 442, 444 [166 P.2d 401]. Moreover, the subject was covered in other instructions given.

Instructions A, C, D, E, and F offered by plaintiffs and not given, are based upon the statements in *Dow* v. *Holly Manufacturing Co.* (1958) 49 Cal.2d 720, 727 [321 P.2d 736], where the court analogized the situation there (a subcontractor was held liable for injuries sustained from gas escaping from a defective wall heater negligently installed by a sub-

contractor) to the rule stated in Restatement of Torts, section 400: "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer."

The substance of instruction A was better covered in the given instructions which in detail set forth the duty to the public of a manufacturer and of an assembler of an article inherently dangerous and stated that if defendant in designing, manufacturing, assembling, selecting or installing component parts of the vaporizer failed to exercise ordinary care to make it reasonably safe for the use to be made of it in the Owens-Corning plant, defendant was negligent. Instruction E was rejected as being a "formula" instruction not containing all the necessary elements. 2 Witkin, California Procedure, Trial, § 62, page 1790, defines a "formula" instruction as one "which *directs a verdict for a party* in the event that the jury finds certain facts to be true. The propriety of such an instruction depends upon whether it includes *all of the legal elements essential to a verdict*. The absence of any material element is prejudicial error, which *cannot be cured* by reference thereto in other instructions." (Emphasis author's.) Moreover, the instruction, except for its "formula" form, is repetitious of the instructions hereinbefore mentioned.

Instructions C, D, and F concerning the duty of the assembler and seller of an article are somewhat repetitive and their substance was adequately pointed out in the instructions given concerning the defendant's duty in inspection and care in the manufacture and assembly of the vaporizer in its component parts. The court has no obligation to give cumulative or amplifying instructions. *(Zuckerman v. Underwriters at Lloyd's, London* (1954) 42 Cal.2d 460, 471 [267 P.2d 777].)

 Plaintiffs offered an instruction to the effect that the individual plaintiffs were neither negligent in any respect nor did they assume the risk of the occurrence. The court did not give it. Defendant concedes that although its answer pleaded both contributory negligence and assumption of risk, there was no evidence of either.

In *Blackwell* v. *American Film Co.* (1922) 189 Cal. 689, 700 [209 P. 999], the court stated, concerning an instruction to the effect that there was no question of contributory negligence under the evidence, "Inasmuch as there was no such evidence, as already pointed out, it was proper for the court

to withdraw this issue from the jury's consideration." Similar language was used in *Prunty* v. *Allred* (1946) 73 Cal. App.2d 67, 75 [165 P.2d 935], where the court upheld the giving of an instruction that there was no issue of contributory negligence in the case. In *Eramdjian* v. *Interstate Bakery Corp.* (1957) 153 Cal.App.2d 590, 602 [315 P.2d 19], the court said: "Furthermore, in the absence of evidence of contributory negligence or assumption of the risk, it is not error to fail to instruct on such subjects. *(Harlow* v. *Van Dusen,* 137 Cal. App.2d 547, 551 [290 P.2d 911].)* In fact, where there is no substantial evidence on a particular issue, the court should remove that issue from the consideration of the jury in order that they not be confused or misled. *(Chapman* v. *Pacific Electric Ry. Co.,* 85 Cal.App. 69, 74 [258 P. 1006].)* "

This language would apply to the defense of assumption of risk as well as to that of contributory negligence. Although in the cases above mentioned, which seem to be the only ones in this state mentioning the subject, the courts were not considering the failure to instruct that negligence was not an issue, but were considering the fact that instructions that negligence was not an issue were given, and hence the expressions above set forth are probably dicta, we are of the opinion that the instruction should have been given. However, the real question is whether under the circumstances of this case the failure to give this instruction was prejudicial. The court at great length instructed upon defendant's duties and to the effect that if the jury found defendant to be negligent proximately causing plaintiffs' injuries, plaintiffs should recover. It is clear from the instructions that the only issues were that of defendant's negligence, and the question of negligence of plaintiffs' employer as an intervening independent cause. In his opening statement to the jury defendant's counsel stated, "[W]e will submit the question to you, that the sole cause of this particular explosion was the failure of the employers of this young man, these young men, to properly install and properly maintain and clean the unit after its installation; as a proximate result of their own carelessness and negligence, they brought about this accident." It is conceded that neither contributory negligence nor assumption of risk was argued to the jury.

Plaintiffs contend that the words "their own carelessness and negligence" in the above sentence refers to "these young men" and not to the employers of these young men. It is

doubtful if this is so. If it were, it is inconceivable that in view of the fact that negligence or assumption of risk was never thereafter mentioned during the long trial of the case, the jury would have considered there to be such issues. Plaintiffs have not cited to us any evidence which might have led the jury to consider plaintiffs to be negligent or to have assumed any risks.

There was mention that a communication had stated that there might have been negligence on the part of the operators of the equipment, and that plaintiff Yecny was doing something in the vicinity of the vaporizer at the time of the explosion, but no pinpointing of either as bearing on the question of these issues. As we do not perceive how the jury could possibly have been confused on this matter, the failure to give the proposed instruction could not have been prejudicial.

2. The Experiment.

At the prior trial, Eclipse's vice president Magnuson had given the opinion that the burning Dowtherm E would have generated enough heat to cause the vaporizer to rupture or explode. At the second trial, he testified that burning E would not have generated enough heat to cause the vaporizer to rupture or explode. Plaintiffs' counsel then brought out that the reason for the change of opinion was due to an experiment made by Magnuson between trials concerning the burning of Dowtherm in a vaporizer. After testimony concerning the conditions under which the experiment had been made, plaintiffs objected to evidence of the experiment being given on the ground that the conditions under which the experiment was made were not similar to the conditions at the time of the explosion. The court overruled the objections, instructing the jury "in doing so I am not determining whether the conditions were similar or not. Those are matters which you must determine for yourselves. I am simply passing preliminarily if there is sufficient to permit the evidence regarding this experiment. It is for you ultimately to determine whether the conditions were the same or sufficiently similar to that, if the experiment has any evidentiary value."

The respects in which it is claimed that the conditions of the experiment differed from the situation at the time of the accident follow:

1. The experimental model was a slightly different model, having more tubes, but its dimensions were identical. 2. The

experimental boiler was manufactured some six years after the one involved in the case. 3. The experimental model was new and had never been used. 4. The experimental vaporizer was located on level ground and not in a pit as was the vaporizer in question, and the experimental burning was done outdoors. 5. Dowtherm, in the experiment, was deliberately introduced into the firebox and lighted. There was evidence that the Dowtherm had leaked into the firebox of the vaporizer which exploded. Thus, the way the Dowtherm entered the firebox was different in the experiment than in the actual case. 6. In the experiment the Dowtherm was not ignited until the pressure was at 95 pounds. Plaintiffs claim the evidence showed that the Dowtherm in the actual case burned at a substantially lower pressure. 7. The amount of vapor used experimentally could not duplicate the vapor actually present in the case since that amount was unknown. 8. The experimental model was not connected to a smokestack whereas the vaporizer in question was. 9. Manual, not automatic, controls were used in the experiment.

▉▉▉ "Although testimony relative to experiments is primarily addressed to the discretion of the trial court 'it must appear that the conditions or circumstances were in general the same in the illustrative case and the case in hand . . . ▉▉▉ [T]he determination whether the conditions were sufficiently similar to make the experiments of any value in aiding the jury is a matter resting in the sound discretion of the judge.' *(People* v. *Mondshine* (1933) 132 Cal.App. 395, 397-398 [22 P.2d 779], quoting from *Guinan* v. *Famous Players-Lasky Corp.* (1929) 267 Mass. 501, 521-522 [167 N.E. 235].) ▉▉▉ 'The conditions surrounding a test or experiment of this nature need not be identical with those existing at the time of the occurrence in question provided there is substantial similarity. *(County of Sonoma* v. *Stofen* (1899) 125 Cal. 32 [57 P. 681].) ▉▉▉ The admission of such evidence is largely a matter of discretion with the trial court, and such a test is merely a circumstance to be considered in connection with other evidence in the case.' *(Ortega* v. *Pacific Greyhound Lines, Inc.* (1937) 20 Cal. App.2d 596, 597-598 [67 P.2d 702].)" *(Beresford* v. *Pacific Gas & Elec. Co.* (1955) 45 Cal.2d 738, 748 [290 P.2d 498].)

▉▉▉ It is within the discretion of the trial judge to determine whether the conditions of the experiment were sufficiently similar that the evidence of the experiment would

aid rather than confuse the jury. (*People* v. *Roberts* (1953) 40 Cal.2d 483, 491 [254 P.2d 501].)

Under the above rules the conditions of the experiment were sufficiently similar to the conditions with which they were being compared for the judge to admit the evidence and to leave it to the jury to determine whether, as he said, ''the conditions were the same or sufficiently similar . . .'' for the experiment to have any evidentiary value. Plaintiffs seem to think the language of the judge indicates that he was abdicating his judicial power to determine the admissibility of the evidence. On the contrary, he was determining that in his judgment the conditions were sufficiently similar to admit evidence of the experiment, but the ultimate determination of the evidentiary value was for the jury.

The judgments are affirmed.

Sullivan, J., and Molinari, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 23, 1963.